IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DELWIN G.,[1]                                             No. 6:21-cv-00597-HZ

                    Plaintiff,                           OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Jeremy L. Bordelon
Evergreen Disability Law
465 NE 181st Ave., No. 500
Portland, OR 97230

Edward A. Wicklund
Olinksy Law Group
250 S Clinton St., Ste. 210
Syracuse, NY 13202

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
Civil Division Chief
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Michael J. Mullen
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Delwin G. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on June 30, 2017, alleging an onset date of August 7, 2016. Tr. 96.[2] His application was denied initially and on reconsideration. Tr. 99–103, 105–07.

      On November 21, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 954. Additional evidence was obtained after the hearing, and a supplemental hearing was held via teleconference on May 20, 2020. Tr. 51. On June 2, 2020, the ALJ found Plaintiff not disabled. Tr. 34. The Appeals Council denied review. Tr. 1.

///

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11.

## FACTUAL BACKGROUND

Plaintiff alleged disability based on an unknown autoimmune disease and arthritis in his right hip. Tr. 225. At the time of the alleged onset date, he was 50 years old. Tr. 41. He has a high school education and past relevant work experience as an "assembler, subassembly" and "sanitation supervisor." Tr. 32.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 21. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "autoimmune neutropenia; history of left leg cellulitis; asthma; status post hip arthroplasty; diabetes type II with neuropathy; lumbar spondylosis; methamphetamine use." Tr. 21. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 24. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> The claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. He is limited to standing one hour, walking one hour, and sitting eight hours total in an eight-hour workday, with normal breaks. He is limited to occasional bilateral push and/or pulling with the upper extremities. He is limited to occasional bilateral foot control operation. He is limited to occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. He is limited to

> occasional balancing, stooping, kneeling, crouching, and crawling. He must avoid exposure to unprotected heights and operational control of moving machinery. He must avoid even moderate exposure to fumes, odors, dust, gases, and poorly ventilated areas. He must avoid walking on uneven terrain.

Tr. 25–26. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 32. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "mail clerk," "office helper," and "storage facility rental clerk." Tr. 33. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 34.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

///

///

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to account for all of Plaintiff's limitations associated with his autoimmune neutropenia in his RFC; and (2) accepting testimony from a vocational expert ("VE") that conflicted with the Dictionary of Occupational Titles ("DOT") without a reasonable explanation for the conflict at Step 5. Because the ALJ erred in accepting the VE's testimony at Step 5, the Court remands this case for further proceedings

### I.      Autoimmune Neutropenia

Plaintiff first argues that the ALJ erred by not accounting for limitations caused by his autoimmune neutropenia—specifically, chronic absenteeism and/or the need to avoid people—in formulating the RFC. Pl. Br. 8, ECF 19. The RFC is the most a person can do, despite his physical or mental limitations. 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence, including the claimant's testimony." *Id.*; SSR 96–8p. The ALJ is required to include only those limitations which are supported by substantial evidence in the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). "Conversely, an ALJ is not free to disregard properly supported limitations," including improperly discredited symptom testimony provided by the claimant or lay witness. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

Plaintiff testified that he became sick often with both infections and other illnesses. Tr. 26, 968. Plaintiff stated that he was ill seven to nine times a year, for a week or two each time. Tr. 969, 61 (testifying he was going to the hospital every three months). He also testified that in his last year of employment, he missed five weeks of work. Tr. 963. While in the hospital, he was monitored and to treated with IV antibiotics to help fight off infections. Tr. 61. Plaintiff

testified that even before the COVID-19 pandemic, he would wear a mask and stay home to avoid getting ill. Tr. 60, 62–63 (testifying that his wife would shop so he could stay home). He also stated he was told to stay away from people who are sick. Tr. 64. He stopped falling ill as frequently when he began staying home all the time. Tr. 63. By the time of the second hearing, Plaintiff had not been to the hospital in a while. Tr. 61

The ALJ found that Plaintiff's autoimmune neutropenia supported limitations to accommodate Plaintiff's fatigue and limit his risk of injury or respiratory irritation that would result in poor healing. Tr. 27. But the ALJ determined that other limitations—including regularly missing work—were not supported by the record. Tr. 28. In reaching this conclusion, the ALJ found "[t]he record shows that, with treatment, the claimant's neutrophil levels were normal for much of the relevant period." Tr. 28. She noted that Plaintiff was hospitalized twice in 2016 and required frequent injections in early 2017, but she found that the frequency of both the hospitalizations and the treatments did not support regular attendance limitations. Tr. 28.

The ALJ's findings are supported by substantial evidence. The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Inconsistencies between the claimant's subjective symptom testimony and the objective medical evidence may be used to discount that testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). Evidence of effective treatment may also support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits"). A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3); *see also Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (emphasizing that the medical evidence established the plaintiff had a good response to treatments for his underlying impairments).

Here, the ALJ did not err in concluding that Plaintiff's condition improved with treatment and that the frequency of his hospitalizations and other treatments did not support regular attendance limitations. Contrary to Plaintiff's testimony that he was hospitalized at least a few times every year, the record shows that Plaintiff was hospitalized twice in 2016 and once in 2017 for about a week each time. Tr. 371 (hospitalized for throat infection in February 2016), 367 (hospitalized for thumb infection after drill injury in September 2016), 834–35 (hospitalized for

throat infection in December 2017). Each time, his neutropenia and infections improved with G-CSF treatment and antibiotics. *Id.* There are other appointments with medical providers for injuries and illnesses in the record, but there are no other hospitalizations in the record after 2017. *See* Tr. 333 (urgent care visit for cut on leg in August 2017), 526–35 (April and May 2018 appointments for ingrown toenail), 518 (appointment for mouth pain and cough in February 2019), 617 (appointment for thrush in May 2019). In addition, the record shows that Plaintiff's neutropenia was managed with G-CSF or had improved such that it did not require treatment at these appointments. While Plaintiff was on G-CSF on an outpatient basis, doctors remarked that his mouth sores were improved and had not recurred, that his white blood cell count had improved, and that he looked well. Tr. 554, 547, 533, 541, 535, 532, 526, 522, 518. By 2018, Plaintiff was doing well enough that the frequency of his G-CSF injection was decreased and eventually ceased because he had recovered. Tr. 535, 532 (reduced dosage frequency), 522 (discontinuing G-CSF because he was not neutropenic and had improved). Indeed, despite a respiratory infection in February 2019, Plaintiff was not neutropenic and did not need to restart G-CSF. Tr. 518. In other words, the record shows that the claimant's autoimmune condition improved and was successfully managed with treatment throughout much of the relevant period.

Plaintiff suggests that this improvement was due to isolating at home after he stopped working, but this statement is not supported by the record. Indeed, while providers recognized that his condition is "chronic" and "lifelong," the record reasonably suggests that Plaintiff's improvement was due to his successful treatment, as described above. Moreover, contrary to Plaintiff's claim that he was told he should avoid people, no provider appears to have recommended that Plaintiff isolate from others. Rather, medical providers recommend that he avoid environmental hazards:

> Pt has a chronic condition which induces leukemia posing a significant risk for infection if exposed to environmental hazards. He previously worked in sanitation and had to quit due to infection risk. This is a life long condition which will not improve[] and can only be managed with close follow-up by hematology.

Tr. 583. They specifically noted that Plaintiff must not work in a "dirty" environment due to his condition. Tr. 584 ("Reduced WBC count limits environmental exposure and he must work in a clean or home environment due to infection risk[.]"); *see also* Tr. 590 (recommending Plaintiff never be exposed to chemicals or environmental irritants," including a "dirty environment."). And the ALJ accounted for these environmental limitations in the RFC. The ALJ's interpretation of the record—that Plaintiff's condition improved because of treatment and that no further limitations were warranted—is a reasonable one. Tr. 28. Accordingly, the ALJ did not err in failing to include either absenteeism or limited contact with other people in the RFC.

## II.    Step 5 Analysis

Plaintiff argues that the ALJ erroneously accepted VE testimony that conflicted with the DOT without a reasonable explanation for the conflict. "While the claimant has the burden of proof at steps one through four, the burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (citations omitted). "The ALJ may pose to a vocational expert a hypothetical incorporating the residual functional capacity determination ("RFC"); the expert then opines on what kind of work someone with the limitations of the claimant could hypothetically do." *Id.* The ALJ must then determine whether, given the plaintiff's RFC, age, education, and work experience, "specific jobs exist[ ] in substantial numbers in the national economy that [a] claimant can perform despite [their] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

In her assessment, the ALJ limited Plaintiff to "light work" with some additional limitations. Tr. 25–26. The ALJ limited Plaintiff to one hour standing, one hour walking, and eight hours sitting total in an eight-hour workday. Tr. 25. At the hearing, the ALJ presented the VE with a hypothetical that reflected the RFC: "This individual is limited to standing one hour, walking one hour, and sitting eight hours in an eight-hour workday with normal breaks." *See* Tr. 69–71 (hypothetical identical to Plaintiff's RFC). The VE testified that Plaintiff could perform three jobs—mail clerk, office helper, and storage facility rental clerk—because most duties of these office jobs are performed in a seated fashion. Tr. 70–71 ("[T]he three jobs that I cited . . . are all office jobs where most duties are performed in the seated fashion. And one can stand and walk."). While the ALJ recognized the VE's testimony deviated from the DOT definitions of light work in her decision, she did not question the VE further at the hearing. Tr. 34. Ultimately, the ALJ accepted the VE's testimony based on the VE's "training, education, and experience." Tr. 34.

When there is an apparent conflict between the VE testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a decision about whether the claimant is disabled. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Otherwise, the ALJ's failure to resolve an apparent inconsistency may leave "a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence." *Id.* To trigger the ALJ's "obligation to inquire further," the conflict between the VE's testimony and the DOT must be "obvious or apparent." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). Said differently, the VE testimony must be "at odds" with the DOT's listing of job requirements that are "essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

In *Gutierrez*, the Ninth Circuit affirmed the ALJ's decision that the claimant—whose RFC included limitations in overhead reaching—could perform work as a cashier even though the DOT description required frequent reaching. *Id*. at 807. The circuit court explained that "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about" and that "where the job itself is a familiar one . . . less scrutiny by the ALJ is required." *Id.* at 808. Looking to the DOT and common knowledge of the duties of a cashier, the court concluded that there was no obvious or apparent conflict between the DOT and the VE's conclusion. *Id*. While "frequent reaching" was an integral requirement of the job, frequent *overhead* reaching was not. *Id.* Rather, the need to reach overhead was "unlikely and unforeseeable." *Id.* Therefore, there was no obvious conflict, and the ALJ had no obligation to inquire further. *Id.* at 808–09.

By contrast, the Ninth Circuit in *Lamear* found that the ALJ did not adequately reconcile the conflict between the VE testimony and the DOT. 865 F.3d at 1203. There, the VE testified that even with an RFC limiting the plaintiff to "occasional" handling, fingering, and reaching with his non-dominant hand, the plaintiff could perform work as an office helper, mail clerk, or parking lot cashier even though all three jobs require "frequent" handling. *Id*. The court found that the conflict between the RFC and the VE's testimony was "apparent and obvious" based on the lengthy DOT descriptions of the jobs, which included tasks requiring use of both hands like opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change. *Id*. at 1205–06 (noting that "all three jobs require workers to 'frequently' engage in handling, fingering, and reaching, which means these types of activities could be necessary for as much as two-thirds of the workday"). The VE, however, did not explain how the claimant could perform these jobs with his limitations, and the ALJ never asked for a reasonable explanation for the

conflict. *Id.* at 1203–04, 1206. The circuit court reversed and remanded the case so the ALJ could ask the VE to reconcile the jobs with the plaintiff's RFC limitations. *Id.* at 1206.

Applying these cases, district courts have held that more explanation is needed when the ALJ fails to resolve a conflict involving standing and walking limitations. For example, in *Manuel A. H. v. Saul*, the district court concluded that the ALJ failed to clarify VE testimony that a plaintiff who needed to use a cane in their dominant hand could perform jobs requiring occasional walking or standing. 3:20-cv-00911-BAS-LL, 2021 WL 1515576, at *8–9 (S. D. Cal. Apr. 15, 2021) ("[I]t is unclear how a person who needs a cane in their dominant hand can perform the job requirements of a small product assembler such as 'passing unit[s] to another worker,' or 'load[ing] and unload[ing] previously setup machines,' even if this can be done sitting or standing."); *see also Milne v. Berryhill*, No. 5:17-cv-01042-SHK, 2018 WL 3197749, at *7–8 (C. D. Cal. June 27, 2018) (finding the ALJ erred where they did not ask the VE to elaborate on how a claimant that could "stand and/or walk for four hours in an eight-hour workday for one hour at a time, and then would need to sit for 30 minutes before standing and walking again" could perform light work jobs). By contrast, in *Cruz v. Berryhill*, the district court determined the VE adequately addressed the conflict between the light work jobs they identified and the plaintiff's RFC, which included an additional limitation of four hours of walking in an eight-hour workday with the use of a cane when walking for longer periods. No. 16-cv-05910-PJH, 2017 WL 6450491, at *17 (N. D. Cal. Dec. 18, 2017). There, the VE explained that "the mail clerk position required no prolonged ambulation . . . there could be ambulation for short distances for a few minutes at a time. When ambulating longer distances, instead of a cane they have a cart on wheels you can hold onto so that takes place of the cane." *Id.* (internal quotations omitted).

In this case, the Court finds the VE's testimony conflicts with the DOT, and the VE has not provided a reasonable explanation for the conflict. All three jobs identified by the VE are classified as light work, which often requires "a good deal of walking or standing." 20 C.F.R. § 1567(b); SSR 83-14 ("[M]ost light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday."). And the narrative description of each job in the DOT strongly suggests that it is "likely and foreseeable" that walking and standing for a substantial amount of time is necessary to perform "essential, integral, or expected" tasks. *Lamear*, 865 F.3d at 1205. A mail clerk "[m]ay distribute and collect mail." DOT 209.687-026, 1991 WL 671813. An office helper "[f]urnishes workers with clerical supplies;" "[d]elivers oral or written messages;" "[c]ollects and distributes paperwork;" "deliver[s] items to other business establishments . . . [or] between departments of establishment;" and "deliver[s] stock certificates and bonds within and between stock brokerage offices." DOT 239.567-010, 1991 WL 672232. Finally, a storage facility rental clerk "[a]ssists customers in selection of storage unit size;" "[i]nspects storage area periodically;" and "[c]leans facility and maintains premises in orderly condition." DOT 295.367-026, 1991 WL 672594. These tasks, which appear to include a considerable amount of walking or standing, create an "obvious and apparent" conflict between the VE testimony and Plaintiff's RFC, limiting Plaintiff to standing one hour and walking one hour in an eight-hour day. This conflict triggered the ALJ's affirmative obligation to reconcile that conflict.

The ALJ acknowledged the conflict between the VE's testimony and Plaintiff's RFC in her decision, Tr. 34, but she did not "elicit a reasonable explanation" from the VE at the hearing. And VE did not provide a reasonable explanation on her own accord. When presented with the ALJ's hypothetical about an individual who was limited to standing one hour, walking one hour,

and sitting eight hours in an eight-hour workday, the VE responded, "the three jobs that I cited . . . are all office jobs where most duties are performed in the seated fashion. And one can stand and walk." Tr. 71. These vague statements by the VE that "most" job duties are preformed seated, especially in light of the DOT descriptions of these jobs, does not reasonably reconcile the discrepancy between the VE's testimony and Plaintiff's significant walking and standing limitations. Tr. 71; *Cf. Cruz*, 2017 WL 6450491, at *17–18 (VE adequately reconciled conflict by specifically explaining that the mail clerk position only required walking short distances, and that the claimant could hold onto the mail cart in place of a cane when walking longer distances).

In sum, many of the essential requirements described in the DOT job descriptions appear to exceed Plaintiff's limitation to one hour of walking and one hour of standing in an eight-hour workday. The ALJ's failure to resolve this conflict between the VE's testimony and the DOT constitutes error. *See Lamear,* 865 F.3d at 1205 (using both hands is likely and foreseeable to perform "essential, integral, or expected" tasks of the jobs identified by the VE, triggering the ALJ's responsibility to reconcile the claimant's RFC with the VE testimony). Accordingly, the Court finds that remand for further proceedings is necessary.[3]

---

[3] Because the Court has concluded that the ALJ did not err in considering the limiting effects of Plaintiff's autoimmune condition, Plaintiff's sole argument that this case should be remanded for benefits is that Plaintiff should have been classified as capable of sedentary work based on his walking and standing limitations. Pl. Br. 10–13, n.2. According to Plaintiff, such a finding would result in a determination that Plaintiff is disabled under the Grids. *Id.* The Court, however, is unpersuaded that it can conclude Plaintiff's limitations necessitate a finding that Plaintiff is capable of only sedentary work. *Compare* Tr. 25–26 (RFC limiting Plaintiff to standing and walking one hour in an eight-hour day, sitting for eight hours in an eight-hour day, occasionally pushing or pulling with the upper extremities, and occasional foot control operation) *with* 20 CFR § 404.1567(b) (defining light work as requiring lifting and carrying 20 pounds frequently and walking or standing a good deal *or* sitting most of the time with some pushing and pulling of arm or leg controls). Moreover, the VE may be able to reconcile the apparent conflict in the record. Accordingly, remand to the agency for further proceedings is appropriate in this case.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: _January 12, 2023_____.


_Marco Hernandez_____
MARCO A. HERNÁNDEZ
United States District Judge